IN THE

# SUPREME COURT

OF THE

# STATE OF WYOMING.

## APRIL TERM, 1891.

---

ROY v. UNION MERCANTILE CO.

(April 27, 1891.)

ATTACHMENT — FRAUDULENT ASSIGNMENT — APPEARANCE—BILL OF EXCEPTIONS—QUESTION NOT RAISED BELOW.

1. In attachment, where defendant denies the allegations of the affidavit, and has a trial on that issue, he cannot complain for the first time in the supreme court that the verification of the affidavit was defective.

2. Where, on attachment, defendant is personally served with summons, and appears to take issue upon the allegations of the affidavit, but makes no defense in the main action, the court acquires complete jurisdiction.

3. The fact that one who has made an assignment for the benefit of creditors retains possession of the property, and uses it in his business as before, without any attempt for nearly a month to carry out the purpose of the assignment, is sufficient evidence of fraud to sustain an attachment.

4. Where the bill of exceptions was allowed after the term, and the record fails to show that time was given under the Wyoming statute providing that time may be given for that purpose, the supreme court cannot review the ruling of the trial court on a motion for new trial.

5. Where the bill of exceptions fails to state that it contains all of the evidence, the court will not review the ruling of the trial court upon

a motion for new trial on the ground that the judgment is not sustained by the evidence.

Error from district court, Laramie county.

Action by the Union Mercantile Company against Horace A. Roy. Plaintiff had judgment, and defendant brings error. Affirmed.

*J. C. Thompson* and *J. F. Rowan,* for plaintiff in error. *Lacey & Van Devanter,* for defendant in error.

CONAWAY, J. This cause, which is brought in this court by petition in error by Horace A. Roy, who was defendant below, was begun by defendant in error in the district court of the first judicial district for Laramie county, November 18, 1886. The petition was filed and summons issued on that day. An affidavit for attachment and the proper undertaking were filed at the same time. The order of attachment was issued December 11th following. This is termed an "*alias* order," but it is the only one in the record, and is admitted to be the only one served. It was served December 15, 1886. On the 8th of October previous, plaintiff in error had made an assignment of all his proper-

ty not exempt from execution, ostensibly for the benefit of his creditors, and had filed inventories of such property assigned on November 10 and 11, 1886, including the property seized by virtue of the attachment. He retained possession of the property assigned until it was so seized, which was on December 15, 1886. Plaintiff in error appeared in the court below, but did not contest the causes of action alleged against him in the petition of plaintiff, the defendant in error here. He traversed those allegations of the affidavit for attachment which called for and authorized the issuance of the writ, and moved the dissolution of the attachment on the ground that those allegations were untrue. Evidence was introduced, and a trial had, upon this issue. This motion was overruled, and he excepted. He objected to taxing the costs of the attachment proceedings as part of the costs of the cause, and to including them in the judgment. This motion was overruled, and he excepted. These are the matters complained of in the petition in error.

An objection claimed to be jurisdictional is raised in this court for the first time. It is based upon an alleged defect of form in the verification of the affidavit for attachment, and it is claimed, in one of the briefs of counsel, with some citations of authorities, that it is fatal to the jurisdiction in the attachment proceedings. This is followed by numerous citations of authorities in an additional brief, to the point that errors or omissions which render the judgment void may be taken advantage of at any stage of the proceedings, and that questions which go to the jurisdiction are never waived. In this way, an alleged defect in the jurisdictional basis of the ancillary attachment proceedings seems to be perverted into an attack upon the jurisdiction of the court to hear and determine the cause to which these proceedings were appurtenant. As to this, it is sufficient to say that the jurisdiction of the court to render judgment in this cause in no manner depended upon the attachment proceedings. The court had jurisdiction of the subject-matter beyond question. The record shows that jurisdiction of the person of the plaintiff in error was obtained by personal service of a summons upon him, and this was followed by his appearance in the court below, and such proceedings there as to amount to a submission to the jurisdiction. It may well be held that an appearance

by a party to object to the jurisdiction, to move the court to dismiss the action for want of jurisdiction, or to move the court for any action, or ask the court for any relief, not involving the exercise of jurisdiction, but rather a refusal to exercise it, would not be an acknowledgment of the jurisdiction of the court or a submission to it. On the other hand, an appearance and moving the court for any action, or asking for any relief involving the exercise of jurisdiction, is such a submission and acknowledgment. Such was the course of the plaintiff in error in the court below. He appeared, but raised no question of jurisdiction. He made no defense to the causes of action alleged against him in the petition. But he did deny such allegations of the affidavit for attachment as authorized the issuance of the writ, and introduced evidence and had a trial upon the issues thus presented. He was then in court for all purposes. Waples, Attachm. p. 393. After this, it seems, it was too late to raise any question as to the sufficiency of the affidavit in any respect, or even as to its existence. He was no longer in position to question the validity of the attachment or the resulting lien, whatever might have been the case as to others. Drake, Attachm. § 112, and cases there cited. Much less can he now be heard to urge such matters as being fatal to the jurisdiction of the court, or as rendering the judgment void. If he had raised the objection in time, the utmost it could have accomplished, in any event, would have been the dissolution of the attachment. This would not have affected in any degree the jurisdiction of the court in the cause, to which the attachment proceeding was a mere incident. A tree is not felled by sawing off a limb. All that was really necessary to say upon this point is that the court had jurisdiction of the subject-matter of this cause by law, and of the person of the plaintiff in error by the personal service of the summons upon him. In deference to the labored and ingenious arguments of counsel, we have discussed the matter, perhaps, at undue length.

But one other point is urged on behalf of plaintiff in error. It is insisted that the action of the court below in overruling the motion of plaintiff in error to dissolve the attachment, and consequently allowing the costs of the attachment to be taxed as part of the costs of the action, and in refusing a rehearing and a new

### Roy v. Union Mercantile Co.

trial upon these points, is not sustained by the evidence. It would seem that the state of the record is such as to present two insuperable objections to the consideration of this point: *First*, the bill of exceptions does not seem to have been legally allowed; and, *second*, it does not affirmatively show that it contains all the evidence.

1. As to the allowance of the bill. The law in force at the time of this trial, and until changed by the Session Laws of 1890, required that the party excepting should reduce his exception to writing, and present it to the court for allowance. It further provided that time might be given to reduce the exception to writing, but not beyond the first day of the next succeeding term of court. Then, if true, it was the duty of a majority of the judges composing the court, or of the court or judge before whom the trial was had, to allow and sign it. Under this law, a majority of the supreme court of the territory of Wyoming had held that the exception might be presented to and allowed by the judge in vacation. In 1890 the legislature, no doubt desiring to make the court in the future unanimous on the question, passed a law to the same effect. In this record it does not appear that any time was given to reduce the exceptions to writing, and to present them to the court or judge thereof. In such case, it is evident that any time beyond the trial term could be taken, if at all, only by consent of the opposite party. No such consent appears. At page 192 of the transcript of the record appears the following: "Each of the foregoing orders and decisions having been duly entered on the record of the court in the case, the defendant forthwith, after the entry of the orders and decisions, caused to be noted at the end thereof, on said record, the exception thereto. The foregoing bill of exceptions is hereby settled and allowed. [Signed] W. L. MAGINNIS, Chief Justice, Judge, etc. [Seal.]" This is followed on the next page, without any intervening matter, by an attestation by the clerk under the seal of the court, dated February 11, 1889; and this is all that the record discloses of this branch of the case. It does not show that the plaintiff in error had any time given him beyond the term to reduce his exceptions to writing and present them to the court or judge. It does not show that this was done within any time which could lawfully have been given for such purposes, *i. e.*, not beyond the first day of the next succeeding term. This cause was tried at the term of court commencing in November, 1886. The court will take judicial knowledge of the fact that the next succeeding term would convene in the following May, and the record reveals that this last-mentioned term was in fact held. It is not doubted that if time had been given until the first day of the May, 1887, term, to reduce the exceptions to writing, the judge might, in the exercise of a wise judicial discretion, have taken additional time to examine and settle the bill of exceptions. It is a violent assumption that he would take from May, 1887, to February, 1889, for that purpose. At all events, the record does not show that the exceptions were even reduced to writing within the utmost time that could lawfully have been given. This court has no legal right and no disposition to ignore or evade these positive provisions of the statute. The provisions, especially as to time, are salutary. It is a matter of no small importance that the exceptions should be reduced to writing and presented for allowance promptly, while the matters of exception are fresh in the minds of the judge and counsel. It is also desirable that there should be, within some reasonable time, an end to litigation.

2. The bill of exceptions nowhere states that it contains all of the evidence introduced in the trial of the issue in the attachment proceedings. Where a judgment or finding is assailed as not sustained by sufficient evidence, this is indispensable. This court cannot say whether or not the judgment of the court below, including, as it does, the costs of the attachment proceedings, is sustained by the evidence, unless it is affirmatively shown that all of the evidence upon which such judgment or finding was rendered is before this court. This should be done by the bill of exceptions itself. It is argued for plaintiff in error that the certificate of the clerk sufficiently shows that the transcript of the record contains all of the evidence. It is not competent to show this fact by the certificate of the clerk. The truth of the bill of exceptions, as to whether or not it correctly and fully states all of the evidence, as well as to all other of its contents, is to be ascertained by the trial court or the judge thereof, and authenticated, when so ascertained, by the signature of the judge. The office of the certificate of the clerk, in so far as it affects

### Roy v. Union Mercantile Co.

the bill of exceptions, is simply to identify it as the identical bill which is made part of the record in the cause in the court below. With the truth or falsity of its contents he has nothing to do, and his certificate cannot and does not go to these questions at all. Neither does it attempt to do so. The language of the certificate in this cause, so far as it affects this question, is to the effect that "the hereto annexed and next following leaves, numbered from 1 to 192, both inclusive, are a full, true, and correct transcript of the files, proceedings, journal entries, and record in the action," etc. To construe this into an assurance that the transcript so certified to contains all of the evidence is to hold that the "files, proceedings, journal entries, and record" must contain all of the evidence. Such is not the law. The evidence need not be part of the record, unless made so by the bill of exceptions, and then only so much of it as is necessary to explain the exceptions. Where the exception to a verdict of a jury, or a finding or judgment of the court, is that it is not sustained by the evidence, it is necessary to set forth the entire evidence. The bill of exceptions does not show that this is done. Therefore, as well as for reasons already given, we cannot consider the question whether the judgment of the court below is sustained by the evidence or not.

We announce these views all the more cheerfully because, waiving these questions, if they can be waived, or considering that we may be mistaken in them, we find that the evidence presented by the bill of exceptions, whether it be all of the evidence or only a part, is amply sufficient to sustain the judgment of the district court. The plaintiff in error himself testifies that he retained possession of the property assigned, after the assignment, the same as before, and used it in his work and business just the same. He explains his possession as that of the assignee, as his agent. Such possession of the assigned property, by the assignor, after making the assignment, is very generally held to be presumptive evidence of fraud. It is not material that the assignor claims that he holds such possession as agent of the assignee. It is the fact of possession that the law regards, and not the pretext or excuse for such possession. When to the fact of possession is added the continual use of the property for his own benefit, with no movement towards carrying out the avowed purpose of the assignment, and nothing done in the interest of creditors, from November 18th to December 15th, this would seem to be something more than mere evidence of a fraudulent purpose in making the assignment, sufficient to avoid it; it would seem to be, pro tanto, to the extent of the value of the benefit derived by the assignor from the use of the assigned property, as well as in the delay, and the deterioration of the property by using it, an actual, accomplished fraud. These are some, but by no means all, of the matters appearing from the evidence, which courts have very generally concurred in recognizing as the ear-marks of fraud; and these are sufficient, at least, to raise a presumption of fraud, and to sustain the attachment. There is an attempt to justify the retention of possession of the assigned property by the assignor on the ground of delay by the assignee to execute his bond, as such, until the day the attachment suit was commenced. The law of voluntary assignments in force in Wyoming at the time of these proceedings did not allow the assignee to dispose of the real estate conveyed to him by the assignment before executing his bond. This was the only restriction. When not prohibited by the statute, or by terms imposed by the assignor in the deed of assignment, an assignee may execute his trust, as such, without giving bond. Besides, plaintiff in error retained possession of this property, after the assignee executed and filed his bond, on the 18th day of November, until the property was seized under the attachment, the 15th day of December, and all this time used it as his own. All this appears from the testimony of plaintiff in error himself. There were a large number of exceptions taken to rulings of the trial court in the admission and rejection of testimony. These are, however, not urged by the present attorneys for plaintiff in error. The most that could be said of these exceptions, allowing them all to be valid and well taken, is that, in that event, they would constitute error without prejudice; for, on the testimony of plaintiff in error alone, the judgment must be affirmed.

GROESBECK, C. J., and MERRELL, J., concur.