Lawrence HOOVER, Appellant,

v.

STATE of Alaska, Appellee.

No. 6223.

Court of Appeals of Alaska.

March 18, 1982.

Raymond Funk, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Lawrence Hoover was charged with murder in the first degree, AS 11.41.100(a)(1), for the contract killing of Nancy Williams. Hoover pled *nolo contendere* and was sentenced to ninety-nine years' imprisonment by Judge James R. Blair. This is the maximum sentence for first degree murder. AS 12.55.125(a). Hoover now appeals to this court, alleging that his sentence is excessive. Having reviewed the record and given due consideration to the memoranda of the parties, we have concluded that Judge Blair was not clearly mistaken in imposing the sentence, and we accordingly affirm.

On August 22, 1979, Clarence "Tip" Williams, a psychologist and marriage counselor employed at Eielson Air Force Base, purchased an insurance policy insuring the life of his twenty-five-year-old wife, Nancy Williams, in the amount of $60,000 in case of her accidental death. Shortly thereafter, Tip Williams began talking with his friend, Lawrence Hoover, about the prospect of killing his wife Nancy. By June of 1980, Williams and Hoover had agreed to murder Nancy Williams. By the terms of the agreement, Hoover would be paid between $15,000 and $25,000.[1]

On November 9, 1980, Williams and Hoover went grouse hunting with Nancy. Pursuant to the murder plan, Nancy was shot in the face with a .20 gauge shotgun at point-blank range.[2] She was killed instant-

1. Apparently Williams had previously tried to interest another person in such a murder contract. That person, however, refused the offer.

2. The record of the case does not definitely indicate whether it was Hoover or Williams who, in fact, fired the fatal shot. It was the state's position throughout the proceedings, however, that it was Hoover who pulled the trigger.

ly. Williams and Hoover then dragged Nancy's body by her feet through the woods to their car. They brought the body to the Eielson Air Force Base medical clinic where they reported that she had accidentally shot herself while hunting. Following an examination by a doctor, Nancy Williams was officially pronounced dead. Medical personnel at Eielson medical clinic noted that both Williams and Hoover apparently had been drinking.

On November 11, 1980, Air Force Sergeant Glen Kidd contacted military authorities and the Alaska State Police. Kidd reported that on the night of October 1, 1980, while he was drinking with Hoover at the Moose Creek Lodge, Hoover had told him that he and Tip Williams were going to kill Nancy Williams. Hoover outlined the hunting "accident" which they had planned and stated that Nancy would definitely not see Thanksgiving.

Ultimately, Hoover was charged in a two-count indictment with murder in the first degree, AS 11.41.100(a)(1), and with solicitation to commit perjury, AS 11.56.200 and 11.31.110. On the third day of his murder trial, Hoover pled *nolo contendere* in exchange for the state's agreement to drop the charge of solicitation to commit perjury and to not make a specific recommendation to the court as to the appropriate sentence.

On July 17, 1981, Judge Blair found Hoover to be the worst type of offender within his class, and accordingly, he sentenced Hoover to ninety-nine years' imprisonment.

 In this appeal, Hoover contends that a sentence of ninety-nine years is excessive. He argues that it was inappropriate for Judge Blair to characterize him as the worst type of offender in his class. While we agree that this is essentially Hoover's first criminal offense,[3] and though we

recognize that his military and employment records are favorable, we do not think that such factors must necessarily preclude a finding that Hoover is the worst type of offender. Regardless of the favorable characteristics of the offender, the nature of the offense alone may be enough to support a worst offender classification. *See Brown v. State*, 601 P.2d 221, 235 & n.38 (Alaska 1979); *Wilson v. State*, 582 P.2d 154, 156–57 (Alaska 1978). In the instant case, Hoover committed one of the most heinous types of first degree murder. The severity of a coldly premeditated contract murder of a young woman by firing a shotgun into her face at point-blank range cannot easily be dismissed. Accordingly, we cannot conclude that Judge Blair was clearly mistaken in his characterization of Hoover as a worst offender.

Furthermore, in light of the nature of this offense, we do not think that Hoover's admission of guilt or his agreement to aid the state in its prosecution of Tip Williams necessitates a finding that Hoover is not the worst type of offender.

Finally, despite the length of the sentence imposed, we cannot say that it was inconsistent with the *Chaney* criteria. *State v. Chaney*, 477 P.2d 441 (Alaska 1970). Focusing on the low probability of Hoover's rehabilitation, Judge Blair concluded that a lengthy sentence was necessary to isolate Hoover in order to protect society and to assure the deterrence of similar behavior upon his eventual release from confinement. Judge Blair also gave weight to the need to deter others from such conduct and to express the community's condemnation of such behavior. Given the facts of this case and the nature of this offense, we do not feel that Judge Blair was clearly mistaken in imposing a ninety-nine-year sentence.[4]

---

**3.** Apparently, while talking to Kidd at the Moose Creek Lodge, Hoover had told of his involvement with Williams in two insurance fraud schemes. In one, Williams and Hoover had burned Williams' car in order to collect the insurance. In the other, Williams had received $2,000 from a third party for faking an accident. Williams in turn had given $1,000 to

Hoover. The record does not reflect that any criminal charges were brought or other action was taken in these two incidents.

**4.** Hoover also contends that Judge Blair's sentencing remarks indicate that Hoover was penalized for his failure to introduce lie detector evidence regarding his contention that it was, in fact, Williams who fired the fatal shot. This

The sentence appealed from is therefore AFFIRMED.

argument is meritless. Upon sentencing, Judge Blair stated,

At the time Mr. Hoover entered his plea he stated that he did not pull the trigger in this case, that he would take a lie detector test and prove that and that I would have that at sentencing. Well, no one has presented any evidence along those lines. If there were evidence along those lines, that Mr. Hoover had not pulled the trigger in this case, I would be more—I would be more susceptible to being much more lenient in this case.

Although Hoover did submit to a lie detector test, he apparently failed it, and thus, he did not introduce the results as evidence in his favor. Absent such exculpatory evidence, Judge Blair sentenced Hoover in accordance with his plea. We think it strained to argue that since Judge Blair stated that he would be more lenient in the face of evidence that Hoover did not pull the trigger, the failure to present such evidence led him to penalize Hoover. In essence, it is more appropriate to conclude that Hoover's failure to present polygraph evidence was neutral in its effect; it was used neither to benefit nor to penalize Hoover.