Delphine LINDSEY, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 85–264.

Supreme Court of Wyoming.

Sept. 16, 1986.

Leonard D. Munker, Public Defender, and Julie D. Naylor, Appellate Counsel, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Michelle McKellar, Legal Intern, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Chief Justice.

This appeal is taken from a judgment of the district court affirming a conviction by a jury in county court of the offense of reckless endangering which is proscribed in § 6–2–504(b) and (c), W.S.1977.[1] The questions presented relate to the granting of a motion in limine which prevented the defendant from referring to the fact that one of the State's witnesses had been arrested in connection with the events underlying the offense of which the defendant was convicted; the failure to grant a mistrial because of the lack of compliance by the State with a discovery order; asserted prosecutorial misconduct claimed to be so prejudicial as to deprive the defendant of a fair trial; and the manner in which the trial was conducted which is claimed to be deprivation of due process. This latter contention ties to the claim of prosecutorial misconduct additional assertions relating to jury misconduct; an inopportune break for a lunch recess; and assistance of the trial court with respect to prosecutorial evidence which manifests bias. We can discern no prejudicial error with respect to any of the claims made by appellant, and we affirm the judgment of the district court affirming the conviction in the county court.

As we have noted, Delphine Lindsey was charged with a violation of § 6–2–504(b) and (c), W.S.1977. Following a verdict of guilty returned by a jury in the county court, she was sentenced to serve a term of 30 days in the county jail, of which 29 days were suspended, and she was placed on six

---

1. Section 6–2–504(b) and (c), W.S.1977, provides:

   "(b) Any person who knowingly points a firearm at or in the direction of another, whether or not the person believes the firearm is loaded, is guilty of reckless endangering unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another."

   "(c) Reckless endangering is a misdemeanor punishable by imprisonment for not more than one (1) year."

months unsupervised probation. An appeal then was taken to the district court, and in connection with that appeal a statement of the case, as provided by Rule 4.07, W.R.A. P.C.L.J., was prepared.[2] This rule assumes that the statement of the case shall become the record on appeal to the district court in lieu of the usual documents and recordings. There were some special aspects of this statement of the case, however.

In the statement of the case itself this language appears:

"Neither these points nor the statement of the case are meant to be exclusive of the audio transcript of the proceedings, exhibits, and other matters contained in the court file."

The order approving the statement of the case entered by the judge in the county court says in part:

"A WRITTEN STATEMENT OF THE CASE having been presented to this Court by the defendant and the State of Wyoming, and the Court having reviewed the same and being satisfied of the truthfulness thereof, and being otherwise fully advised;

"IT IS HEREBY ORDERED that, pursuant to Rule 4.07, W.R.A.P.C.L.J., the Statement of the Case filed herein is approved and *shall be made part of the Record on Appeal, together with the* court file, exhibits, and *audio transcript* of the proceedings in the lower court." (Emphasis added.)

There also was included on the face of the order a handwritten note by the county court judge stating: "The Court calls specific attention to the Audio Record of the proceedings & the matters reflected thereon." Upon review the district court af-

firmed the judgment and sentence entered in the county court, and this appeal is taken from the order of the district court affirming the conviction.

In her brief Delphine Lindsey recites these issues for resolution:

"I. Whether it was error to grant the Motion in Limine preventing the Defense from referring to the fact that Koenig was arrested for impersonating an officer.

"II. Whether the Court erred in refusing to grant a mistrial based on the failure of the State to comply with the discovery order.

"III. Whether the prosecutorial misconduct was so prejudicial as to deny Appellant a fair trial.

"IV. Whether the trial was conducted in a manner inconsistent with due process."

The State of Wyoming states the issues to be:

"I. Did the trial court err in granting the State's Motion in Limine preventing appellant from referring to any charges which may have been filed against Mark Koenig, a witness in this case?

"II. Did the trial court err in its handling of appellant's complaints regarding discovery?

"III. Was appellant deprived of a fair trial by prosecutorial misconduct or the conduct of the trial court?"

In her reply brief, Delphine Lindsey presents an additional issue:

"Whether the tapes are superseded by the Statement of the Case pursuant to Rule 4.07 W.R.A.P.C.L.J."

---

**2.** Rule 4.07, W.R.A.P.C.L.J., provides:

"When the questions presented by an appeal to the district court can be determined without an examination of all the pleadings, evidence, and proceedings in the court below, the parties may prepare and sign a statement of the case showing how the questions arose and were decided in the subordinate court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the questions by the district court. The statement shall include a copy of the judgment or order appealed from a copy of the notice of appeal with its filing date, and a concise statement of the points to be relied on by the appellant. If the statement conforms to the truth, it, together with such additions as the court may consider necessary fully to present the questions raised by the appeal, shall be approved by the subordinate court and shall then be certified to the district court *as the record on appeal.*" (Emphasis added.)

As a preliminary matter we will address the scope of the record to be reviewed. Lindsey contends that the electronic tapes of the proceedings in the county court cannot be considered in this appeal because they were superseded by the statement of the case included in the record on appeal. Although Lindsey does not present this contention we also note that, in accordance with Rule 4.02, W.R.A.P., the failure to transcribe the tape recordings would be a ground for not considering them.[3] Rule 4.02, W.R.A.P., differs from Rule 4.02(b), W.R.A.P.C.L.J., which provides that the electronic tapes need not be transcribed for the appeal to the district court, unless that court so requires. We already have alluded to those portions of the record which manifest the intent of the trial court that the record in this instance not be limited to the statement of the case.

It has been a long-standing policy of this court that the record on appeal should include a proper transcript of the proceedings in the trial court, and in the absence of a properly certified transcript of those proceedings this court will not consider them. *Salt River Enterprises v. Heiner,* Wyo., 663 P.2d 518, 520 (1983), citing *Roy v. Union Mercantile Company,* 3 Wyo. 417, 26 P. 996 (1891); *In re Basin State Bank,* 43 Wyo. 1, 296 P. 1074 (1931); *Northwestern Terra Cotta Company v. Smith-Turner Hotel Company,* 47 Wyo. 190, 33 P.2d 915 (1934). An alternative to a transcript is recognized in Rule 4.03, W.R.A.P., which permits the appellant to prepare a statement of the evidence, to be approved by the district court in those instances in which a transcript is unavailable. Delphine Lindsey did not pursue that alternative for a transcript in this case.

In this court adverse consequences have attached to the failure to provide a statement of the case where no transcript is available. *Minnehoma Financial Company v. Pauli,* Wyo., 565 P.2d 835 (1977). In *Wydisco, Inc. v. McMahon,* Wyo., 520 P.2d 218 (1974), the appeal was dismissed because neither a transcript nor a statement of the case was furnished, and the court concluded that it was unable to consider the questions raised in the absence of one or the other. In another case the court said it would presume the regularity of the proceedings and limit itself to questions which did not require a review of the transcript. *Matter of Manning's Estate,* Wyo., 646 P.2d 175 (1982). In *Salt River Enterprises v. Heiner,* supra, the court advised that in the absence of a proper transcript the trial court's findings of fact would be accepted for purposes of the appeal. In *Scherling v. Kilgore,* Wyo., 599 P.2d 1352 (1979), the consequence of the appellant's failure to avail himself of Rule 4.03 was that he could not sustain his burden of demonstrating error in the appeal.

Despite the possibility that this court could limit or refuse review in the absence of an appropriate record in the form of a statement of the case according to our rules of appellate procedure or a transcript, we have, in the interest of justice, examined the record including the tapes and considered each of Delphine Lindsey's claims on the merits. Lindsey conceded in oral argument that the statement of the case that was offered was not as thorough as it might have been, although obviously she assumed that it could meet the requirements of Rule 4.03 W.R.A.P. We do not intend to recede from our rule that a transcript rather than the electronic recordings should be provided in this

---

3. Rule 4.02, W.R.A.P., provides in pertinent part as follows:

"All transcripts of testimony, evidence and proceedings shall be certified by the official court reporter to be true and correct in every particular, and when so certified shall be received as prima facie evidence of the facts, testimony, evidence, and proceedings set forth in such transcript. The transcript format shall be 8½ × 11 inches and a maximum of twenty-five (25) lines per page. The reporter shall indicate at the bottom of each page the name of the witness, the name of counsel then examining, and the type of examination there appearing. Appended to the transcript shall be an index of witness's testimony, and the points at which exhibits were offered and admitted or refused. The transcript shall be certified by the clerk as a part of the record on appeal. * * *"

court if claims of error are asserted based upon matters in the record and no statement of the case has been prepared in accordance with Rule 4.03, W.R.A.P. In this instance the record as manifested by the electronic tapes is essentially consistent with the statement of the case. The tapes do reflect some details of significant factual matters. We therefore have relied upon both sources to resolve the issues.

We have gleaned the material facts from the record items alluded to previously. Delphine Lindsey lived in an apartment on the third floor of an apartment building, and her daughter and grandson lived in an apartment across the hall. A dispatcher for the Casper Police Department also lived on the third floor of the same building. On June 24, 1984, Sally, a female friend of the police dispatcher went to the apartment to water plants. Sally was accompanied by two friends, Mark Koenig and Matt. Delphine Lindsey was home, but her daughter and husband were out for the evening. The grandson with a friend, Michael, was in and out of Delphine Lindsey's apartment and his mother's apartment.

Koenig went with Sally while she watered her friend's plants, but Matt entered into dialogue with Delphine's grandson and his friend in the hallway. Koenig then joined in this dialogue which apparently became a confrontation and then degenerated into an altercation involving pushing and shoving. At that time Koenig displayed a dispatcher's badge which he had taken from the apartment, and Koenig and Matt then took a set of numchucks away from the two boys. (Numchucks are two wooden handles which are joined by a short piece of chain, and which have no apparent utility other than as an offensive or defensive weapon.) At that juncture the grandson came to Delphine Lindsey for assistance. He told her that two men had his friend up against the wall. Delphine Lindsey then obtained her Smith & Wesson .32 caliber pistol and sent the grandson to his own apartment to obtain his mother's cordless phone in order to call the police. At about the same time Sally, who had finished watering the plants, left her friend's apartment, walked down the hall and started down the stairs. Koenig and Matt then left the grandson's friend and followed her. When they reached the parking lot the men threw the numchucks into a nearby field or yard.

Delphine Lindsey managed to telephone the police on the cordless phone as she was following Sally, Koenig and Matt down the stairs. She then confronted these three people in the parking lot and, with her pistol in her hand, she ordered them to find the numchucks. She restrained Sally and Koenig while Matt went to the field and retrieved the numchucks. Delphine Lindsey refused to put her gun down even though she was asked to by Koenig who again displayed the police dispatcher's badge.

Three officers then responded to the call by Delphine Lindsey. While they were talking to the participants Lindsey's daughter and son-in-law arrived at the parking lot. They were alarmed by witnessing the police with Lindsey and their son, and they also became involved in the situation. After some time the police officers took all these people with them to the police station for the purpose of obtaining statements. The only person arrested that evening was Koenig who was charged with impersonating an officer. (It appears that charge was dropped at some later time, and he was charged with unlawful entry.) Some two months later Delphine Lindsey was served with a criminal complaint charging the reckless endangering offense.

The State of Wyoming filed a motion in limine to prohibit any mention of the charges against Koenig at the trial of Delphine Lindsey, and the court granted the State's motion. While no mention was made of the charge against Koenig the county court permitted both the State and Delphine Lindsey to develop completely the facts leading up to the incident involving the charge of reckless endangering. The tape recordings of the trial proceedings demonstrate that both parties took advantage of this opportunity. On appeal, how-

ever, Delphine Lindsey contends that her inability to bring out the fact that it was Mark Koenig who was perceived as the wrongdoer by the police on the night of the incident prejudiced her defense. Her claim of relevance with respect to Koenig's arrest is:

"* * * Clearly it is of consequence to know if Appellant was chasing after a police officer or not. If Mr. Koenig were not a police officer, as he was not, but merely impersonating one, then the reasonableness of Appellant's actions is much more apparent."

■ There is no question that the evidence before the jury demonstrated that Koenig had displayed an officer's badge and that he was not an officer. The fact that he was arrested and charged would not have aided the jury in understanding that aspect of the case. Certainly it would not justify the conduct of Delphine Lindsey. It would not serve in any way to demonstrate that her conduct in pointing the firearm at Sally, Matt and Koenig was "reasonably necessary in defense of [her] person, property or abode or to prevent serious bodily injury to another." For that reason the failure to present the information to the jury could not have prejudiced her right to a fair trial.

The admission of evidence is left to the sound discretion of the trial court. *Stogner v. State*, Wyo., 674 P.2d 1298 (1984); *City of Evanston v. Whirl Inn, Inc.*, Wyo., 647 P.2d 1378 (1982); *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Canyon View Ranch v. Basin Electric Power Corporation*, Wyo., 628 P.2d 530 (1981); *Barnard v. Wendling*, Wyo., 627 P.2d 603 (1981); *Hayes v. State*, Wyo., 599 P.2d 569 (1979); *Boggs v. State*, Wyo., 589 P.2d 839 (1979); *Peterson v. State*, Wyo., 586 P.2d 144 (1978); *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977). The trial court may exclude inadmissible evidence upon a motion in limine. *Hayes v. State*, supra. Rule 402, W.R.E., provides in pertinent part that, "* * * [E]vidence * * * which is not relevant is not admissi-

ble." Rule 401, W.R.E., defines "relevant evidence" as follows:

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Delphine Lindsey has not explained how the evidence of charges against Koenig would make the existence of any fact of consequence to the determination of the charge against her more or less probable, and the court has not been able to divine any such purpose. No reversible error occurred in excluding, pursuant to the motion in limine, reference to the arrest or charges against the witness Koenig.

The discovery order upon which Delphine Lindsey relies in connection with her second claim of error provided that the State must furnish:

"* * * [A]ll information of whatever form, source or nature within the possession of the Natrona County District Attorney, or any State or Federal Law Enforcement Agents known to the Natrona County District Attorney, and all information subject to his knowledge with reasonable diligence * * * which may lead to evidence which may be or become of benefit to the Defendant preparing for or presenting the merits of his defense * * *."

During the cross-examination of a police officer, after the State had produced most of its witnesses on the first day of trial, Delphine Lindsey's attorney discovered that the officer had made a report which had not been provided to the defense. Defense counsel promptly moved for a mistrial. The discussion of this matter then continued in chambers, and it became apparent that another police report and a statement of one witness, both relevant to the case, had not been provided to the defense. Defense counsel then renewed the motion for a mistrial; requested that the State's witnesses' testimony be stricken; refused to agree to a partial striking of the testimony; and asked for a continuance

of the trial. In addition counsel moved for a contempt citation against the prosecutor.

The county court judge admonished the prosecutor; ordered that the undisclosed documents be made available to defense counsel; denied the motion for mistrial; granted a continuance until the following morning but denied any additional continuance; took the matter of contempt under advisement; and granted leave to the defense to recall the officer who had made the second undisclosed report and the witness whose statement had not been furnished. Rule 14, W.R.Cr.P.C.C., is identical with Rule 18, W.R.Cr.P., and it provides in pertinent part:

> "If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances." Rule 14(h), W.R.Cr.P. C.C.

On several occasions the court has construed the provisions of Rule 18(h), W.R. Cr.P. We have articulated a preference for the relief provided by Rule 18(h), W.R. Cr.P., and have said that it "must be sought by an aggrieved defendant, and it is impermissible to by-pass that relief and seek a mistrial. Simms v. State, Wyo., 492 P.2d 516, [524] (1972)." Nimmo v. State, Wyo., 607 P.2d 344, 348 (1980).

The discretion of the trial court in dealing with a breach of any discovery order has been recognized. Stogner v. State, supra; Nimmo v. State, supra; Sims v. State, Wyo., 530 P.2d 1176 (1975). The decision of the court in addressing the breach of a discovery order will be set aside only for an abuse of discretion. Nimmo v. State, supra; Dodge v. State, Wyo., 562 P.2d 303 (1977). In this regard the burden is upon the defendant to specify the evidence that might have been available

to him to rebut the undisclosed information if more time had been available. Stogner v. State, supra. We have refused to afford any relief if the appellant could not specify what helpful evidence he might have produced. Siegert v. State, Wyo., 634 P.2d 323 (1981). There is no question that the harmless error concept will be applied to such claims. Nimmo v. State, supra, citing Nimmo v. State, Wyo., 603 P.2d 386 (1979). In this case the county court granted the inspection sought by the defense counsel and a short continuance. The offer of the county court to strike portions of the testimony of the State's witnesses was refused.

■ This case may be additionally illustrative of the danger of reliance upon an open file policy. In Siegert v. State, supra, the open file policy was applauded. The failure to comply with a discovery order is to be deplored. This record indicates, however, that the prosecutor was as surprised to learn of the two police reports alluded to in the testimony of the witness as the defense was. These documents were in Koenig's police file, and were not in the Delphine Lindsey file. Nothing indicates that any breach of the discovery order in this instance was willful. Under the circumstances the granting of a continuance is within the sound discretion of the trial court. Capshaw v. State, Wyo., 714 P.2d 349 (1986); Siegert v. State, supra; Irvin v. State, Wyo., 584 P.2d 1068 (1978); Robinson v. State, 18 Wyo. 216, 106 P. 24 (1910). The extent of relief in the form of a continuance is also within the discretion of the trial court.

Delphine Lindsey has not demonstrated with any degree of specificity how she was prejudiced by the order of the county court in treating with the breach of the discovery order. She explains, "[h]owever, prejudice is often difficult to show." That is not a proper method of carrying the burden of demonstrating prejudice. We are unable to independently discern any reason to upset the verdict in this case in the absence of any specific explanation of prejudice to the appellant.

Delphine Lindsey next urges prosecutorial misconduct deemed to be so prejudicial as to have denied her a fair trial. She relies upon the failure to comply with the discovery order, which contention has previously been dealt with. In addition she points to the exhibition of a second pair of numchucks and the repeated use of leading questions on direct examination by the prosecutor. We have decided that there was no error with respect to the failure to comply with the discovery order which was not cured by the relief granted by the district court.

■ Turning then to the other matters, the prosecutor, in the course of the cross-examination of Lindsey's grandson, showed the grandson the numchucks taken from him by Koenig and Matt which had been admitted as State's Exhibit 1. The grandson agreed that his numchucks did have a chain on them when the men took them away from him, and no chain was on them at the time of trial. The examination then continued in this way:

"Mr. Hruby: In fact [shuffle of paper bag, rattle of chain], with a chain on 'em, they look something like this, right?
"Merritt: Right.
"Hruby: That correct?
"Merritt: Right.
"Raymond: Objection. This isn't a show of martial arts, your honor. I'd ask that those be put away. We have an exhibit. I don't know what's going on here.
"Hruby: We have an exhibit without a chain and the witness has stated they look something like this with the chain on them.
"The Court: Fair, let's proceed."

The second set of numchucks were not then offered into evidence nor did the prosecutor make any further reference to them. No error occurred in permitting the use of this second set of numchucks for illustrative purposes.

■ With respect to excessive use of leading questions by the prosecutor we do not perceive from perusing the record and listening to the electronic tapes that this in fact occurred. In any event the scope and manner of the examination of witnesses is committed to the control of the trial court. Rule 611, W.R.E. No error in this record in this regard is demonstrated by the record.

The rule is well established that in considering a claim of prosecutorial misconduct the court reviews the entire record to determine if there was the denial of a fair trial. *Sanchez v. State*, Wyo., 694 P.2d 726 (1985); *Wheeler v. State*, Wyo., 691 P.2d 599 (1984); *Stogner v. State*, supra, 674 P.2d at 1302; *Freeze v. State*, Wyo., 662 P.2d 415 (1983); *Jones v. State*, Wyo., 580 P.2d 1150 (1978). Appropriate objections to the misconduct and subsequent curative instructions by a trial court may cure any error. *Mayer v. State*, Wyo., 618 P.2d 127 (1980); *Six Feathers v. State*, Wyo., 611 P.2d 857 (1980); *Simms v. State*, supra. We only reverse for prosecutorial misconduct if it results in substantial prejudice. *Peterson v. State*, supra; *Hays v. State*, Wyo., 522 P.2d 1004 (1974).

In *Hopkinson v. State*, supra, 632 P.2d at 166, and *Freeze v. State*, supra, 662 P.2d at 419, we quoted from the Supreme Court of the United States:

"Prosecutors cannot and should not be muzzled. It must be kept in mind that the prosecuting attorney is a representative of the State whose obligation is to govern impartially, whose aim is not that it win a case but that justice be done. It is his mission that guilt shall not escape or innocence suffer. He is duty bound to prosecute with earnestness and vigor. While he may strike hard blows, he is not free to strike foul ones. *Singer v. United States*, 1965, 380 U.S. 24, 85 S.Ct. 783, 791, 13 L.Ed.2d 630; *Berger v. United States*, 1935, 295 U.S. 78, 55 S.Ct. 629, 633, 79 L.Ed.2d 1314."

It is the prosecutor's duty to seek justice, not necessarily a conviction. *Jeschke v. State*, Wyo., 642 P.2d 1298 (1982); *Hoover v. State*, Wyo., 641 P.2d 1263 (1982); *Valerio v. State*, Wyo., 527 P.2d 154 (1974). Even so a duty is imposed upon the defense to object to improper comment in order

that the trial court may have an opportunity to remedy the situation. *Wheeler v. State*, supra; *Goodman v. State*, Wyo., 601 P.2d 178 (1979).

In *Browder v. State*, Wyo., 639 P.2d 889 (1982), we did accumulate matters such as this and conclude that in a very close case the fairness of the trial was called into question. In this instance, however, two of the acts of the prosecutor which are relied upon were not misconduct. There is nothing to accumulate. *Capshaw v. State*, supra. With respect to the discovery order matter prosecutorial misconduct results in a reversal only if there is substantial prejudice. *Peterson v. State*, Wyo., supra, *Hays v. State*, supra. That prejudice must be identified with sufficient particularity. *Peterson v. State*, supra. What we have said above with respect to the failure to make discovery controls the prejudice aspect of that one claim of prosecutorial misconduct. The Constitution guarantees only a fair trial. No demand is present that any trial be perfect. *Peterson v. State*, supra. The appellant has failed to persuade this court that any conduct of the prosecutor denied her a fair trial.

We then address the matters relating to Delphine Lindsey's final claim. The record discloses that there were two occasions of impropriety during the deliberations of the jury. Three jurors telephoned family members to advise them that the jurors would not be home for supper. When this was discovered the county court judge called each of the jurors involved from the jury room, administered an oath to the juror, and asked if the juror had used the telephone, whom the juror had telephoned, whether the juror discussed the case, and whether the conversation influenced the juror's deliberations in any way. All three jurors answered that they had not spoken of the case nor had the conversation influenced their deliberations. The county court then found that although the conversations were improper nothing had occurred that contaminated the jury.

The second problem with respect to the jury relates to the relief for approximately 30 minutes of the deputy sheriff who had been properly sworn as the bailiff by another deputy sheriff who had not been sworn as a bailiff. The first sheriff did properly instruct the second sheriff, and it was only when the jurors asked if they might review part of the testimony and the unsworn bailiff telephoned the judge to inquire about the jurors' request that this discrepancy was discovered. In this instance also the county court judge promptly administered an oath to the second deputy sheriff and inquired of him what had transpired during the time he served as bailiff over the jury. The deputy sheriff testified that two jurors had come out to call; that he had dialed the numbers for them; and that he stood nearby and overheard their end of the conversations in which their family members were informed that the jurors would not be home for dinner. The sheriff also testified that one of the jurors had come out to inquire about reviewing the testimony; that he had then called the judge; and that thereafter a different juror came out to say they had changed their minds about reviewing the testimony. In this instance the county court judge also found that this occurrence had not contaminated the jury. In both instances an opportunity was afforded to the defense and the prosecution to question the jurors and the deputy sheriff. Both attorneys declined to do so.

The burden is on the defendant to demonstrate prejudice resulting from the ruling of a trial court on a motion for mistrial based on jury misconduct. *Searles v. State*, Wyo., 589 P.2d 386 (1979); *Roby v. State*, Wyo., 587 P.2d 641 (1978); *Dobbins v. State*, Wyo., 483 P.2d 255 (1971). In *Drummer v. State*, Wyo., 366 P.2d 20, 26 (1961), this court quoted with approval the following language from *Trombley v. State*, 167 Ind. 231, 78 N.E. 976, 977 (1906):

"We are justified in disturbing a verdict of guilty on account of the alleged misconduct of a juror only when it is shown that such misconduct was prejudicial to the rights of the defendant, or when such a state of facts is shown that it may

fairly be presumed therefrom that the defendant's rights were prejudiced. * * "

In a civil case in which juror misconduct was alleged as a ground for reversal we held that not only must prejudice be demonstrated to arise from the misconduct, but that this court defers to the trial judge with respect to a finding of prejudice. *Distad v. Cubin*, Wyo., 633 P.2d 167 (1981). In the case of Delphine Lindsey the county court judge found no prejudice to her from the improprieties alleged. Delphine Lindsey has not demonstrated that the trial judge abused his discretion in this regard. *Distad v. Cubin*, supra.

■ Finally, Delphine Lindsey contends that the trial court decided to take a lunch break at "what Appellant felt to be a crucial point in the cross-examination" of the victim. She contends that she was denied due process. She does concede that people do need to eat and that an objection already had interrupted the on-going flow of the cross-examination. Delphine Lindsey also complains that the trial court assisted the prosecutor in getting a statement into evidence and urges that this assistance manifests bias on the part of the trial court in favor of the prosecution. In the context of the entire proceedings the one instance is not sufficient to demonstrate bias in favor of the prosecution. Neither of these matters can be perceived as reversible error.

We conclude that there was no reversible error based on any of the issues raised by Delphine Lindsey. The order of the district court affirming the judgment and sentence entered in the county court is affirmed.

URBIGKIT, Justice, dissenting, with whom CARDINE, Justice, partially joins.

The court's decision to justify the motion in limine obtained by the prosecution, as well as to accept prosecutorial misconduct in a criminal case as an acceptable norm prompts this dissent, and a third issue in-

volving the requirements of the appeal record merits separate discussion.

### Motion In Limine Granted to the Prosecution

The court determines that reversible error did not occur from the prosecutor's use of the motion in limine to exclude reference to the arrest or charges against the State's witness, Mark Koenig, which arose from the same transaction as the charges against Mrs. Lindsey. The court justifies the exclusion by determining that the appellant had failed to show that the evidence was relevant or that its exclusion prejudiced her right to a fair trial. The court discusses whether the charges against Koenig justified or excused appellant's conduct, but that is not the problem. Appellant's confrontation-clause rights [1] have been violated, because she was prevented from developing on cross-examination the possible or probable bias of the State's witness, who had faced criminal charges arising from the same incident in which appellant was charged. After all, Koenig without question violated the criminal law by impersonating an officer before any contested conduct of appellant occurred.

This court most recently discussed the confrontation issue in *Story v. State*, Wyo., 721 P.2d 1020 (1986):

"Rule 611(b), W.R.E., allows cross-examination that exceeds the scope of direct as long as it goes to the credibility of the witness. And, under some circumstances, the confrontation clause guarantees the defendant's right to engage in cross-examination on credibility issues. [Citations] In order to preserve error under Rule 611(b) or the confrontation clause, the defendant must make an offer of proof showing how his proposed cross-examination will impeach the witness's credibility." 721 P.2d at 1034.

We went on to explain in *Story v. State*, supra, that an offer of proof is not always necessary.

---

1. The Sixth Amendment to the United States Constitution states in part:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

"Once [the State's witness] had testified on rebuttal, it became 'apparent from the context within which [the] questions were asked' that defense counsel's inquiry into [the witness'] employment history was intended to attack her credibility. The trial court would have erred if it had prevented this inquiry *even though appellant made no offer of proof.* See Rule 103(a)(2), W.R.E." (Emphasis added.) 721 P.2d at 1034.

In this case the purpose of questioning Koenig about the charges against him was clear to the judge. Both counsel and the judge discussed in some detail whether or not the State's witness, Mark Koenig, was biased because he had been charged with impersonating an officer in connection with the incident for which Mrs. Lindsey was on trial. Rule 103, W.R.E., states in part:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

\* \* \* \* \* \*

"(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

The Wyoming committee note which appears as a footnote to Rule 103, W.R.E., specifically provides that an offer of proof at trial is not necessary in this case:

"Under Rule 103(a), it is not necessary to re-offer evidence which has been suppressed by action of the court on a pretrial motion, such as a *motion in limine* or a motion to suppress \* \* \*." (Emphasis added.)

The trial court determined in discussion of his decision to grant the State's motion

in limine that "[t]he fact of there having been an arrest or charge against a witness neither makes that witness any more or less credible."[2] But *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), holds otherwise:

"The partiality of the witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony, 3A J. Wigmore, Evidence, § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." 415 U.S. at 316, 94 S.Ct. at 1110.

In *Davis v. Alaska,* supra, the fact that the witness was on probation for a prior juvenile crime was sufficient to invoke the Sixth Amendment right of confrontation on that issue. In this case, the fact that Koenig was charged with a crime arising from the same incident for which Mrs. Lindsey was on trial is even more supportive of her constitutional right to cross-examine Koenig.

The Wyoming Supreme Court has previously accepted the view that the *Davis v. Alaska* holding is limited to the showing of bias or prejudice, *Salaz v. State,* Wyo., 561 P.2d 238 (1977); *Connor v. State,* Wyo., 537 P.2d 715 (1975), but bias and prejudice are the precise concerns involved in Koenig's testimony.

The State's motion in limine should have been denied, and appellant allowed to exercise her Sixth Amendment right to cross-examine Koenig about his arrest for impersonating an officer in connection with the incident for which she was on trial (which was, in effect, for making a citizen's arrest of two people, one of whom was imperson-

---

**2.** This is patently not justified by casual knowledge of human behavior or exhaustive psychological research. Generically it can be said that "intended self interest equates to questionable veracity." This is the reason that inculpatory custodial confessions are so inherently unreliable that they cannot fall within a traditional hearsay exception such as a declaration against

interest. See Ponsoldt and Steering, *Accomplice Accusations in the Criminal Process: The Application of Sixth Amendment Tests for the Reliability of Hearsay Evidence to Probable Cause Determinations,* 16 Rutgers L.J. 869 (1985). See also *Lee v. Illinois,* —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

ating an officer and both of whom were in a hassle with her teen-age relatives).

### Prosecutorial Misconduct in Disregard of Discovery Order

Prosecutorial misconduct reflected in violation of the trial court's discovery order was well defined by the trial court critique:

"Well, all that I can say, [Mr. Prosecutor], * * * I wish that there was a way that I could express the absolute disgust that this court is developing. Do you realize that in virtually every single case that comes over here, suddenly there's an audio tape that * * * we didn't show the defense, suddenly there's a video tape that we didn't show them, now there's a report, * * * now there are two reports and a statement that we didn't show them. You and your office have no credibility with this court when it comes to compliance with discovery. I'm sorry. And yet there's no more blunt way that I can put it than that."

I question that this court meets its responsibility under Art. 5, § 2 of the Wyoming Constitution by continuing to countenance this kind of deliberate prosecutorial misconduct. See Abramovsky, *A Case Against Automatic Disbarment*, 13 Hastings Const.L.Q. 415 (1986).

"The prosecutor occupies a unique role in a legal system predicated generally on individual representation. The prosecutor does not represent the victim of a crime, the police, or any individual. Instead, the prosecutor represents society as a whole. His goal is truth and the achievement of a just result. The distinction between the roles of competing advocates in a criminal case was articulated by Justice White, joined by Justices Harlan and Stewart in their concurring and dissenting opinion in *United States v. Wade* [388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)].

" 'Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. To this extent, our so-called adversary system is not adversary at all; nor should it be. But defense counsel has no comparable obligation to ascertain or present the truth. Our system assigns him a different mission. He must be and is interested in preventing the conviction of the innocent, but, absent a voluntary plea of guilty, we also insist that he defend his client whether he is innocent or guilty. The State has the obligation to present the evidence. * * * '

"The difference in our roles as advocates derives from the degree of our authority and the disparity of our obligations. Defense counsel's legitimate and necessary goal is to achieve the best possible result for his client. His loyalty is to the individual client alone. The prosecutor, however, enters a courtroom to speak for the People and not just some of the People. The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of 'The People' includes the defendant and his family and those who care about him. It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name." Commentary, *On Prosecutorial Ethics*, 13 Hastings Const.L.Q. 537–539 (1986).

Possibilities of disbarment, suspension, reprimand, or only unkindly opinion comment seem to be insufficient deterrents in operational fact. The finite, final and constitutional responsibility is vested in this court, pursuant to the Wyoming Constitution.

If this court would face the hard reality that it alone should and does set the minimum standard for prosecutorial behavior by summary reversal, then the continuing education process of ethics and court order compliance would be quickly learned.

This is a good case to set that standard by summary reversal. Factually, one

might wonder why Mrs. Lindsey was ever prosecuted under the circumstances. Certainly others in a similar circumstance might react as Mrs. Lindsey did. Lacking malum in se, if not malum prohibitum, a retrial with all of the facts presented would not be an unduly arduous responsibility for the justice system of Natrona County.

This court begs the question when it states that prejudice is required in order to enforce court orders and rule requirements. Compliance should be the norm and prejudice automatically recognized in court order violation. Certainly prejudice does occur when a rule or court order is ignored by an attorney in order for him to gain a litigative advantage. Of deeper concern is the damage to the concept of the justice delivery system when the highest court countenances rule or court order violation in order to affirm criminal convictions.

On the record, the prosecutor deliberately withheld material which was subject to court ordered disclosure, and the modest continuance in no way exercised suitable corrective responsibility or provided a fair opportunity for defendant to properly prepare and present her defense. The re-do requirement in response to the do-it-right standard should not be ignored in this court's supervisory responsibility to guarantee the individual's right to a fair trial within constitutional mandates. Standards should be expected, not violations excused.

To rectify the problem in this case the trial judge granted a continuance only until the next morning. Repeated violations of discovery should be addressed in a manner which will effectively discourage future violations by the prosecutor. The minimal sanction of a brief continuance which was imposed in this case will not likely deter the prosecutor's propensity to violate procedural and constitutional rights of defendant or, more importantly, afford an adequate opportunity to defend. See this author's dissent in *Gentry v. State*, 724 P.2d 450 (1986).

### Tape Recording As Appellate Record

The third concern I have, although not as a concern for reversal, is a statement in the majority opinion that it has been this court's long-standing policy that a verbatim written transcript rather than a tape recording should be provided to this court "if claims of error are asserted based upon matters in the record and no statement of the case has been prepared in accordance with Rule 4.03, W.R.A.P."

At the present time court reporters will not normally be found in county court trials or in governmental body proceedings and many agency or commission sessions. Appeal is normally to the district court, wherein the intermediate appellate decision will be rendered except in cases of direct certification by the district court to this tribunal where permitted under the agency appeal authorization proceedings of our current rules of appellate practice.

A transcript is not required, absent extraordinary circumstances, for appeals to the district court from the decisions of a county court, justice of the peace court, or municipal court. Rule 4.02, W.R.A.P.C.L.J. The majority opinion cites Rule 4.02, W.R.A.P. for the proposition that failure to transcribe tape recordings for the Wyoming Supreme Court would, however, be grounds for not considering them. It is not clear to me that Rule 4.02, W.R.A.P. stands for that proposition, and on a number of occasions in my brief and certainly not conclusive experience on the court, tape recordings have come to us as part of the record and, though not transcribed, have been used in the process of opinion preparation, indicating that adherence to the rule may have been selective.

I discuss this issue at this time by virtue of the extensive treatment afforded by the majority. My concern is whether it would be preferable to secure an explicit rule from the Permanent Rules Advisory Committee for adoption by this court.

If it is now determined that no tape recording will be an acceptable instrument for record preservation in an appeal to this court, then little reason is found to put the

district court to the trouble of listening to extended tapes, at least in any case where a succeeding appeal to this court might reasonably be expected. In other words, by our absolute rule we probably create a general written-transcript requirement for the district court.

Since, during my short tenure on this court, tape recording usage has posed no particular additional problem once a machine can be found of the proper kind for replay, I personally do not feel burdened by this alternative means of preserving a record. Tape recording saves time, is efficient, and is particularly accurate. However, if it is now to be the fixed rule that tape recordings will not be accepted by this court, then some understanding and guidelines should be developed in conjunction with the Judicial Conference as an aspect of the Uniform Rules for the District Courts of the State of Wyoming.

Cases cited by the majority are not particularly supportive of "a long-standing policy of this court" to require a transcript. *Salt River Enterprises, Inc., v. Heiner*, Wyo., 663 P.2d 518 (1983), discusses the rule that trial transcripts must contain a court reporter's certificate to be properly authenticated and considered by this court, as do *In re Basin State Bank*, 43 Wyo. 1, 296 P. 1074 (1931); and *Northwestern Terra Cotta Company v. Smith-Turner Hotel Company*, 47 Wyo. 190, 33 P.2d 915 (1934). The issue in each of these cases was authentication of the transcript or record on appeal and not whether a transcript was in fact required (in lieu of a tape recording or otherwise).

With one exception, the other past writings of this court and cases cited do not afford a different conclusion. The one exception is a footnote in *City of Evanston v. Whirl Inn, Inc.*, Wyo., 647 P.2d 1378 (1982), wherein Justice Raper, discussing minutes of the city council, said:

"* * * The facts as here indicated were disclosed during the course of the trial de novo. An envelope containing a cassette tape recording of the meeting is included in the record. However, this court requires a transcript of proceedings. Accordingly, our reconstruction of those hearings comes from the evidence taken in the district court. Rules 4.02 and 12.04, W.R.A.P." 647 P.2d at 1381 n. 3.

In *Nix v. Chambers*, Wyo., 524 P.2d 589 (1974), and in *Wydisco v. McMahon*, Wyo., 520 P.2d 218 (1974), no record of any kind was available upon appeal. In *Minnehoma Financial Co. v. Pauli*, Wyo., 565 P.2d 835, 838 n. 1 (1977), we said:

"This is not a case like *Wydisco, Inc. v. McMahon* [supra], or *Nix v. Chambers*, [supra], where there were no transcripts or statements of evidence. Here we have all of the evidentiary documents which were presented to the district court. We can generally determine from the evidence and other pleadings contained in the record, the issues sought to be raised by appellant."

In *Stanton v. State*, Wyo., 692 P.2d 947, 948 (1984), in speaking about the record, we noted:

"Apparently there was no objection lodged concerning [the prosecutor's] statement and for that matter the statement itself does not appear as part of the record; however, there is no denial that it was actually made.[2]

"[2] The tape recording containing this remark was not forwarded to this court as a part of the record on appeal."

Preferably to me, this court should resolve any uncertainties by a clear court rule, coordinated with our intermediate appellate tribunals—the district courts. Taking the record on Supreme Court appeal as it was considered by the district court on its appeal does have economic justification in the justice delivery system.

In any event, I would remand the case for a new trial.

CARDINE, Justice, partially dissenting.

I join Justice Urbigkit in that portion of his dissenting opinion entitled "Tape Recording As Appellate Record," addressing the necessity of a written transcript for appeals from county courts.