Donald Ross **FREEZE**, Appellant (Defendant),

v.

The **STATE** of **Wyoming**, Appellee (Plaintiff).

No. 5844.

Supreme Court of Wyoming.

April 21, 1983.

Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, signed the brief and appeared in oral argument on behalf of appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., signed the brief on behalf of appellee. Ms. White appeared in oral argument.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE, and BROWN, JJ.

RAPER, Justice.

A jury found appellant guilty of first degree sexual assault.[1] He was sentenced to serve not less than 25 nor more than 30 years[2] in the Wyoming State Penitentiary.

The only issue presented by appellant is whether appellant's right to a fair trial was infringed upon by the prosecutor's closing argument, during which the appellant asserts the prosecutor stated his personal belief as to the credibility of witnesses and weight of the evidence.

We will affirm.

In the early evening hours the seventeen-year-old victim was walking in a field near the trailer court where she lived. A car drove up behind her on the dirt road where she was walking and the driver asked if she wanted a ride, which she refused and kept walking. The driver of the car, a few minutes later, grabbed her, tore off some of her clothing then and there, and carried her into the field where she was severely beaten into submission and sexually assaulted. Three boys on a motor bike appeared nearby wondering what was going on. Appellant thereupon ran after them and, in his haste, forgot to come back for his automobile. That led to his identification and arrest.

No objections were made to any of the prosecutor's argument at the time the alleged prosecutorial misconduct took place. Appellant's counsel, apparently as a matter of choice after the jury had retired to deliberate, elected to move for a mistrial on the ground that the prosecutor repeatedly prefaced much of his argument with "in my opinion" and "I believe," citing *Browder v. State,* Wyo., 639 P.2d 889 (1982), and that plain error had thus been committed.

We shall take up each of the excised quoted parts of the argument of the prosecutor which appellant asserts to have been prejudicial to the point of being plain error. We will place them within the total context of the argument by before-and-after statements also made by the prosecutor.

Appellant argues that the prosecutor was attesting to the credibility of the State's witness when he argued: "[The victim] was very truthful to you." (R.A. Vol. II, page 211, line 6) However, after filling in appellant's omission, the full statement was:

"[The victim] was very truthful to you. She did admit having sex the night before, but the time span would eliminate any sperm being there. Okay."

The appellant also asserts that the prosecutor improperly commented on appellant's

---

1. Section 6–4–302(a)(i), W.S.1977, provides:
   "(a) Any actor who inflicts sexual penetration or sexual intrusion on a victim commits a sexual assault in the first degree if:
   "(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement * * *."

2. The statutory penalty is not less than 5 nor more than 50 years. Section 6–4–306, W.S. 1977. Appellant is a previously convicted felon. This crime was committed with brutal severity.

credibility and stated his personal belief as to the weight of the evidence when he argued:

"Let's go to Mr. Freeze's testimony.

"First of all the best I can say for it that it was inconsistent to say the least. I don't think he told the same story twice. * * * " (R.A. Vol. II, page 211, lines 9–12)

Going now to the full text of the argument, he went on to explain wherein the inconsistencies existed and then commented:

" * * * So, something I didn't say that I should have said. Arguments are statements of what I believe the evidence was, it is not evidence. Evidence comes from the stand right there, from the witnesses which you heard, and if I misquote the evidence, I want to apologize, because it will not be intentional or has not been intentional, but it is what I remember. What is important is what you heard and have seen." (R.A. Vol. II, page 212)

Then, immediately after that explanation, the prosecutor went into other inconsistencies *not* included as offensive by appellant but worth repeating as illustrative of how misleading are appellant's contentions:

"Under direct examination by Miss Botham, he said he really didn't mean to hit the girl. On cross he said, well, I really didn't hit her, I just bumped her too hard when I put my hand over her mouth. Well, we have some photographs here of her, you have seen them before, and she appeared to be in a hospital robe, as a matter of fact it says, I can't read it, it is backwards, and you can see the pictures. There is no blood there, apparently she has been cleaned up. Look at the eyes too, look at the cheekbones, the left cheekbone, that is the left cheekbone, look at the eyes too, there's no bruises to, no bruises over the eyes. Kind of sad looking, aren't they, the face is swollen, scratches on the neck, looks like some one put their hand over someone's mouth to keep them quiet, the cheekbone doesn't look like it, the mouth, certainly not up there. It is her testimony he hit twice, once on the left cheek and once right in the face, it is her testimony, his testimony is he bumped her, he put his hand over her mouth a little too hard. Just a little too hard, little too hard.

"Now, you know at one time the defendant in his testimony stated that he chased these 3 boys and then turned around. Remember direct by Miss Botham, and he said, well, no, no, I really didn't chase the boys, I only followed them. You make up your mind what he did. He doesn't know what he did, at least he wants you to think either that or so confused by it that he is not sure." (R.A. Vol. II, pages 212–213)

Then we find the following about which the appellant takes exception on the ground of commenting on the credibility of appellant and expressing a personal belief as to his guilt:

"One thing he [appellant] said to me [on cross-examination], you know, sorry for what he did and sorry for any trouble he may have caused or any harms he may have caused this girl. Part of this testimony here. Would a man be sorry for something that he didn't do, sorry for the trouble that he was in, if he didn't do any trouble? You know that is one of the problems that people have, a person has, when this incident happens when they start fabricating stories there for a while they forget what you said. You will say one thing to one question and then 2 or 3 minutes later the same question is asked again, and you don't exactly remember when it was or it comes out a little bit different each time, it gets to what a tangled web we weave when at first we try to deceive, or something like that.

"That is what happens when you start deceiving and it gets all twisted up and you don't know what you said, so you say something else, and it all comes out.

"You know, I asked him [appellant] right away when I first started questioning him if he talked to Kinghorn, and he said, yes. He was telling the truth, yes, I did. That is what he said under oath, I told Kinghorn the truth, and then when I

would point out, I am not sure if he told the truth or not, but an awful lot of inconsistencies in this statement from Mr. Kinghorn, the same as in his testimony here, but what, you know, it is totally the truth and then just pick a few lines out of the statement he made, I didn't say that, that is not the way it happened. Then I asked him a little later, he said, no, I didn't lie to him, I may have, and I may have somebody wrapped up in what he says.

"All of the things he said that he does not know at this time, what is actually the truth? He has built this up, told so many different stories, he can't keep them straight." (R.A. Vol. II, pages 213, lines 23–25; 214; 215, lines 1–6)

As the prosecutor was closing his argument in chief, we point out he again explained to the jury:

" * * * We want you to base your decision on the evidence that you have heard here, not on speculation or conjecture but on the evidence you in fact have heard from that witness stand, not what I have said, but what the witnesses said, and want you to look at all the evidence, photographs, whatever else we have. * * * " (R.A. Vol. II, page 218)

With respect to the prosecutor's closing in rebuttal, appellant contends that the following violated the Code of Professional Responsibility by arguing a matter not in evidence:

" * * * Miss Botham has done quite a bit of testimony on her own behalf in her closing argument, to you. She told you several things we did not—the State did not call Dr. Montgomery to bring in this rape kit, because we know that there was nothing there that is what she said. Yet, look at this. We did not call Dr. Mont-

gomery for other reasons, other than that Dr. Montgomery was available to Miss Botham as well as to us, the State. She could have brought him just as easily as she could have brought Dr. Thorpen * *.[3]

"She could have called Dr. Montgomery in if he was available, he is available to her as he is to us. * * * " (R.A. Vol. II, pages 232, lines 12–20; 233, lines 3–5).

Just preceding the foregoing quote considered objectionable, the prosecutor said this:

"You remember when I talked to you just a minute ago, I told you not to speculate, I wanted you to make your decision on what you heard here in Court, and that is what I mean. Now, what I said was not evidence, what Miss Botham just said was not evidence * * *." (R.A. Vol. II, page 232).

The appellant opened the door and the prosecutor merely closed it.

Appellant is further upset because, in his closing rebuttal, the prosecutor made the following statement:

" * * * [Y]ou saw [the victim] up there testifying. Do you think she was lying? This has been over a year ago, a year ago for those three boys. Do you think she was fabricating? Do you think she was making up those tears? Do you think she imagined a phantasy? I don't think so. * * * " (R.A. Vol. II, page 234, lines 21–25).

But we look at the full text of the paragraph wherein the foregoing appeared:

"She keeps saying there is no evidence, no evidence at all of anything but assault and battery. No sexual evidence whatsoever. Taking off the clothes is, and [the victim's] testimony was that there was penetration. Yes. In fact there was, you

---

3. The language at this point omitted by appellant from the quote and in full:

" * * * [I]f he had been available there was no hesitation on her part to bring Dr. Thorpen in to show evidence that something that she misconceived, the idea of, didn't happen. She brought him in here to testify to that, to show there was no sperm there, and she still believes there has to be sperm there.

"She missed the boat. She doesn't fathom the fact there is no sperm if no ejaculation. She called Dr. Thorpen in for that. She could have called Dr. Montgomery in if he was available, he is available to her as he is to us. I don't want to speculate." (R.A. Vol. II, pages 232–233)

saw [the victim] up there testifying. Do you think she was lying? This has been over a year ago, a year ago for those three boys. Do you think she was fabricating? Do you think she was making up those tears? Do you think she imagined a phantasy? I don't think so. It is up to you to decide, do you think she was?" (R.A. Vol. II, pages 234–235).

It takes on an entirely different hue!

Appellant also considers revoltingly improper another of the prosecutor's statements in rebuttal as an expression of personal belief that the appellant was guilty:

"You know, yesterday the testimony was like I said, very, very, well, I [appellant] did hit her, I didn't strike her, I didn't strike her, I bumped her. Now defense is telling you that he did hit her. I wish they would make up their mind.

"I have made up my mind. I hope you have made up yours." (R.A. Vol. II, page 235, lines 2–8).

Now, we look at the way the prosecutor wound up his rebuttal:

"We don't want you to convict an innocent man because that would be a travesty of justice. None of us want that. We want you to look at the evidence that you heard here on that stand. All if [sic] it. Make your decision based upon that evidence. Look at it when you look at that evidence." (R.A. Vol. II, page 238)

We repeat what the court sitting in *Hopkinson v. State,* Wyo., 632 P.2d 79, 166 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), opined:

"It is necessary to examine the arguments of counsel in their entirety and not take sentences and phrases out of the context of the complete picture being presented by the prosecutor. *Mayer v. State,* Wyo.1980, 618 P.2d 127. * * *"

It was also on the same page there said:

"Prosecutors cannot and should not be muzzled. It must be kept in mind that the prosecuting attorney is a representative of the State whose obligation is to govern impartially, whose aim is not that it win a case but that justice be done. It is his mission that guilt shall not escape or innocence suffer. He is duty bound to prosecute with earnestness and vigor. While he may strike hard blows, he is not free to strike foul ones. *Singer v. United States,* 1965, 380 U.S. 24, 85 S.Ct. 783, 791, 13 L.Ed.2d 630; *Berger v. United States,* 1935, 295 U.S. 78, 55 S.Ct. 629, 633, 79 L.Ed. 1314."

Our review of the transcript of closing argument, which as can be seen we must do, discloses that the prosecutor was completely honest and straight forward with the jury. He was performing the function of closing argument, commenting on the evidence, which he has every right to do. *Barnes v. State,* Wyo., 642 P.2d 1263, 1265 (1982). He carefully was leaving credibility of witnesses and the state of the evidence up to the jury. The appellant received a fair trial. The prosecutor struck no foul blows. There was no prejudice. There was no error.

Affirmed.